IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ELIZABETH A. HILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-0414-CV-W-ODS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER AND OPINION REVERSING COMMISSIONER'S FINAL DECISION TERMINATING BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS**

Pending is Plaintiff's appeal of the Commissioner's decision terminating a previous award of Title II benefits. The Commissioner's decision is reversed and the case is remanded for further proceedings.

The Commissioner previously determined Plaintiff was disabled effective December 1, 2002. This determination was made at the administrative level and was based on the conclusion that Plaintiff met the conditions contained in Listing 12.04(A) and (B), which applies to Affective Disorders. As relevant to this case, a claimant satisfies the listing if she has one of the conditions listed in the A criteria and satisfies at least two of the conditions specified in the B criteria. E.g., Myers v. Colvin 721 F.3d 521, 525-26 (8th Cir. 2013). In Plaintiff's case, the Commissioner determined Plaintiff satisfied the A criteria because she suffered from appetite disturbance accompanied by weight change, sleep disturbance, decreased energy, and suicidal thoughts. With respect to the B criteria, Plaintiff suffered from marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, and had four or more episodes of decompensation of extended duration. R. at 1075-88.

Eligibility for continued receipt of benefits is to be reviewed periodically. 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(a). The Commissioner has established an eight-step process for determining whether benefits should continue or be terminated:

1. Is the claimant engaged in substantial activity? If so, the analysis stops and benefits are to be terminated; otherwise --
2. Does the claimant have an impairment or combination of impairments that meets or equals a listed impairment? If so, the analysis stops and benefits are continued; otherwise --
3. Has there been medical improvement? If not, the analysis skips to Step 5; otherwise --
4. Does the medical improvement relate to the claimant's ability to work? If so, the analysis skips to Step 6; otherwise –
5. Are there exceptions to the medical improvement requirement? The fate of the analysis at this juncture varies, but there is no need to address Step 5 in this case.
6. Does the claimant have any severe impairments? If not, benefits cease; otherwise –
7. Is the claimant able to perform their past work, given the claimant's residual functional capacity ("RFC")? If so, benefits cease; otherwise –
8. Can the claimant perform other work given his age, education, work experience, and RFC? If so, benefits cease; otherwise, they continue.

See 20 C.F.R. § 404.1594(f).

In evaluating whether medical improvement has occurred, the analysis focuses on two dates: the date the claimant was determined to be disabled and the date of the initial cessation decision. Plaintiff was determined to be disabled on August 14, 2003 and the initial cessation decision was May 1, 2010. The ALJ determined Plaintiff had not engaged in substantial gainful activity during that span of time. In comparing Plaintiff's medical condition in August 2003 to her condition in May 2010, the ALJ found Plaintiff's condition had improved and she no longer met or equaled a listed impairment, and that this improvement increased Plaintiff's ability to perform work activities; this sequence of findings brought the analysis to Step 4. The ALJ found Plaintiff still suffered from severe impairments, but while Plaintiff was precluded from performing her past relevant work her RFC permitted her to perform other work in the national

economy.  Therefore, the ALJ issued a decision discontinuing Plaintiff's benefits effective May 1, 2010.[1]

There is no question that Plaintiff had not participated in substantial gainful activity.  At Step 2, the Court concludes the ALJ's decision that Plaintiff did not meet or equal a listed impairment is supported by substantial evidence in the Record as whole.  Plaintiff continued to suffer from depression, but her treating doctor (Dr. James Linnick) did not document symptoms as serious as those that led to the Commissioner's prior conclusion that Plaintiff satisfied Listing 12.04 – suggesting that Plaintiff's condition had responded favorably to medication, counseling, and other treatment.  Focusing on the Records close in time to the termination date, it is apparent that while Plaintiff still took medication for depression, and was still described as depressed, Plaintiff's physical ailments became the focal point of her visits.  R. at 806-37 (records covering visits from January 5, 2010 to April 28, 2010).  Dr. Linnick consistently described Plaintiff as being in no apparent distress, oriented to person, place and time, and having a mood and affect that was normal and appropriate to the situation.  R. at 807, 813, 820, 824, 829, 832.  None of Dr. Linnick's notes documented weight changes, sleep disturbances, decreased energy, or suicidal thoughts; none of his notes suggested Plaintiff had marked difficulties in maintaining social functioning or maintaining concentration, persistence, or pace; finally, none of his notes documented any episodes of decompensation.  Plaintiff relies heavily on her generalized complaint in January 2010 that she was "[h]aving more problems with depression of late" and Dr. Linnick's suggestion that she seek treatment from a psychiatrist.  R. at 809, 811.  However, neither these bare statements in isolation nor the entirety of Dr. Linnick's file suggest Plaintiff was still meeting the conditions contained in Listing 12.04.

---

[1]Then-existing regulations precluded the ALJ from considering whether Plaintiff regressed after May 2010 such that she was entitled to benefits at a later time.  Plaintiff filed a subsequent claim for benefits which was granted, but because the ALJ's decision in this case was dated July 27, 2012, benefits on the second granted claim could commence no earlier than July 28, 2012.  This regulatory whipsaw has precluded any consideration as to whether Plaintiff was disabled after May 1, 2010, but before July 28, 2012.  This circumstance was altered with new regulations made effective in February 2013, and the Court understands that Plaintiff will have the benefit of this new regulation on remand.  E.g., Defendant's Brief (Doc. # 18) at 5 n.1.

In March 2010, Plaintiff underwent a consultative examination performed by a psychologist, Dr. Susan Barngrover. During the exam Plaintiff reported that she had not been in an outpatient program for over two years had been relatively stable. Dr. Barngrover described Plaintiff as oriented to time and, possessing an average to above average intelligence, and as having no outward signs of difficulty of any kind. Plaintiff expressed a desire to work but indicated she could not go to vocational rehabilitation because she had an outstanding student loan. Dr. Barngrover determined Plaintiff suffered from PTSD and Major Depressive Disorder, but that she "has stabilized on her meds and is not currently active in her treatment." She assessed Plaintiff's GAF at 60 currently and 60 over the past year and recommended Plaintiff pursue vocational rehabilitation. R. at 720-22. Another psychologist, Dr. Theron Akins, testified as a medical expert at the hearing. His review of the evidence revealed no basis for concluding Plaintiff's condition met or equaled any listed impairment in May 2010. He further explained that at some point thereafter Plaintiff's condition deteriorated to the point that she met a listed impairment, but that there was definitely a gap of at least a year starting by at least May 2010 during which Plaintiff did not meet a listing. R. at 52-63.

The Record thus establishes that Plaintiff was no longer meeting the conditions specified in Listing 12.04. This conclusion also forces the conclusion that Plaintiff's medical condition improved and that her improvement was related to her ability to work. 20 C.F.R. § 404.1594(c)(3)(i). Thus, the analysis skips to Step 6, and at this step the ALJ determined Plaintiff suffered from the severe impairments of depression, anxiety/PTSD, fibromyalgia, and degenerative disk disease. The ALJ found Plaintiff's RFC as of May 1, 2010, allowed her to lift or carry twenty pounds occasionally and ten pounds frequently, stand or walk six hours a day, sit for six hours a day, and that Plaintiff was also limited to simple routine tasks. Plaintiff could interact with co-workers but could not interact with the public. This RFC precluded Plaintiff from performing her past work, but based on vocational expert's testimony the ALJ found Plaintiff could perform other work in the national economy.

The ALJ's determination of Plaintiff's RFC is not supported by substantial evidence in the Record as a whole. Plaintiff's testimony focused on her condition at the

4

time of the hearing, which was in February 2012.  However, the relevant inquiry was Plaintiff's RFC in May 2010, and the testimony elicited was not related to this issue.  In terms of the medical evidence, the ALJ relied on Dr. Barngrover's opinion that Plaintiff "could work in at least a simple work like setting and should pursue further training," but Dr. Barngrover's opinion did not purport to account for Plaintiff's physical condition.  The ALJ gave significant weight to a non-examining doctor's consulting opinion from September 2010 which itself incorporated findings from *another* non-examining consultant, R. at 18 -- but the ALJ did not mention any of Dr. Linnick's records.[2]  As Dr. Linnick was Plaintiff's treating physician, the omission undermines the strength of the ALJ's analysis.  In fact, Dr. Linnick's records previously cited in this Order present a basis for believing Plaintiff is more limited than the RFC found by the ALJ.

The ALJ also discounted Plaintiff's credibility while formulating the RFC.  The ALJ determined Plaintiff's testimony was undercut by the fact that she worked part time at a shoe store in September 2009; however, this job (which was classified as an unsuccessful work attempt due to its short duration) actually occurred in 2004 – thus, it has little bearing on either Plaintiff's testimony or Plaintiff's RFC in 2010.

The Commissioner's decision is reversed for reconsideration of the decision to terminate benefits, starting with a reconsideration of Plaintiff's RFC on May 1, 2010 and proceeding to reconsideration at Step 8.  If the Commissioner again concludes that Plaintiff's disability ceased on that date, the Commissioner will then consider whether Plaintiff became disabled again before July 28, 2012.  <u>See</u> footnote 1, <u>supra</u>.

IT IS SO ORDERED.

DATE: April 8, 2014

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[2]The ALJ discounted a November 15, 2010, statement from Dr. Linnick.  The Court agrees that the statement was of a "conclusory nature" and is not particularly illuminating.